We'll hear the next case, Wu Zhang v. Ridge Tool Company. Good morning. Good morning. May it please the Court. My name is Stacey Van Malden. I represent the plaintiff below, an appellant herein, Mr. Wu Zhang. Mr. Zhang was injured while using defendant's product. It was a shop vac. He was vacuuming up sanding residue after he applied, about 18 hours previously, Minwax, which is a polyurethane-based sealer for wood floors. And it really doesn't matter what we call that substance that he was vacuuming up, because the question here is whether the plaintiff presented sufficient material evidentiary facts below to allow a fact finder to hear the case. And the case is whether this use, this vacuuming up of this material is a common use or a foreseeable misuse of the product that is dangerous and should be warned specifically against. But he acknowledged that he understood that to be a combustible or flammable material, right? He acknowledged a couple of things, many things. Well, just yes or no. Did he acknowledge that the substance he was vacuuming up, whatever we call it, was flammable or combustible? He acknowledged, I can't answer exactly yes or no, because he didn't answer yes or no. He answered that he knew that after he vacuumed it, that you're to place the remnants from the vacuum into a can with water in it, because yes, it could combust there. So that's combustible or flammable, and the warning on the vacuum says don't pick up flammable materials, right? That's true. So isn't that a sufficient warning? It's not, because this use, everybody uses this vacuum to do that use. And because it's such a foreseeable misuse. Where's that fact, where's that material fact or issue of material fact established on the record? Okay, there's two places. There's the fire marshal, Fire Marshal Clark from Rhode Island, who did the initial investigation. He did not believe, he was looking for an outside ignition source. He was looking for a cigarette or a lighter or something. And he, throughout his testimony, he kept saying things like, oh, I often see this amount of material in the vacuum. Polyurethane dust? The urethane, the dust, yes, that material. He has seen numerous occasions, he uses the word often, often. I always see this much. When you do this particular sanding, the pieces are often this shape or this size. And the amount of dust in the vacuum was something I often see. He said that this is the most frequent use of the machine. And I asked you how you established that. That, you know what? I'm going to use your terms, since you want to be specific about it, because you think that's important. I can appreciate that. This is dust created by wood that's been sanded, that was treated with polyurethane. That's correct. Right? Right. But your assertion is that this kind of vacuuming, this particular kind of dust is the most common use of that shop vac. And I asked you how you established that material fact. And I need to withdraw that statement because it's not even relevant. So you're withdrawing that assertion? No, no, no, that it's the most common. Well, that's what you said. I know. And I spoke incorrectly. It is a common use, not the most common use. But it is a common use or a foreseeable misuse, which is what we would need to show. And even assuming that's true, that it is a common use and foreseeable, the warnings say do not pick up flammable materials, do not use near combustible dusts. Why aren't those warnings adequate? They're not adequate because there's a, first you've got to piece together two different things. Right? The vacuum says don't pick up flammable dusts. It doesn't include polyurethane dust, which is since it's such a common use or a common use, a foreseeable misuse, that should be specified. Isn't that picked up by combustible dust? Well, when you look at the, when you have a can of, what happens? Is polyurethane wood dust a combustible dust? Apparently so. It happened here. Your client acknowledged it was. Yeah. He knew that, but he was taught. Why would this warning even make a difference then? If he understands that this is a flammable dust, he understands the warning says don't use this vacuum to collect flammable dusts. What difference would it have made if it had said polyurethane dust? Because in this, this is a man who has been doing this for ten years. He was taught this is how you do the floors. You lay. I get all that. But if the warning said polyurethane dust, he would have done the exact same thing, it sounds like is what you're saying, right? No. Because then he would have known, he would have been taught for the past ten years in the ten floors that he had previously finished. That's not how you collect this dust. You have to do it in a different way. He knows it's a flammable dust. He knows it's polyurethane dust. He knows the warning says don't use this vacuum to collect flammable dust. But if the warning said polyurethane dust, he would have acted differently. And many other people would act differently. What happens when people don't have the can? If you're getting your wood floor finished. Sometimes using a bag with water in it. I mean, he knew that he wasn't supposed to do this because in prior occasions he used a bag with water in it. He was told that he should use a can with water in it. Once you take it out of the vacuum, his testimony. Then you put it in. Why isn't he picked up by the knowledgeable user defense? Because he did not know of this specific risk. You have to know of the exact danger that you're talking about when you're talking about a knowledgeable user. So in this instance, it's something he'd always done, done for ten years. Nothing ever went wrong. Fire marshal says this is what, I see this all the time. But the fire marshal didn't even think, it's the dust when it's compacted together. That's why when you get it out of the vacuum, you put it in a bag with water. Because it's not supposedly in the vacuum very long. It's in there. You take it out. You dump it into a bag with water. And then when it's being stored or before you throw it out, that's where your danger of combustion is. Thank you. You've saved some time for rebuttal. I have. Thank you. Thank you, your honors. May it please the court. Leonard Lesser for the appellees. Let's clarify some things here. Counsel says it doesn't matter what we call the material. So let's talk about what they called the material. This is their own expert report. This flame that injured this plaintiff was uncured polyurethane sanding residue. That is what they call it. It is no, nothing else. No sophistry is going to change that characterization. Uncured polyurethane sanding residue is indisputably a combustible substance. They admit that in their 56-1B, paragraph 3. The expert report makes clear that the flame that injured this individual was the result of the continuing curing process of the polyurethane dust combination. He is the professional. This is the purported 10-year floor refinisher that was doing floor refinishing projects in New York City, which obligates professional floor refinishers to make sure they read the warning labels on the products that they're using. This individual admits that he purchased the Minwax polyurethane that he utilized throughout his decade-long career. And there couldn't be, nor is there any dispute, about the clarity of what the Minwax warnings say about uncured polyurethane sanding residue. Again, all undisputed in their 56.1B, that sanding residue may spontaneously catch fire. Most importantly, and this is right from the Minwax warning which they concede, quote, accumulated sanding residue may spontaneously catch fire if not immediately disposed in a water-filled container. That's the Minwax warning. They don't take any issue with the Minwax warning. So there is no dispute as to what this individual was warned against. Moreover, this individual made very clear throughout days of deposition testimony that in addition to being able to read and understand the specific warnings about this particular combustible product, that he was taught repeatedly about the dangers of the combustibility of this polyurethane, both in terms of how it's applied and in terms of how it's discarded. He was given examples of horrific burns that happened to people in his industry that were careless and reckless in not following the instructions that these professionals are obligated to follow, both pursuant to the New York City Fire Code and their professional responsibilities. There can be and there is no dispute about the sufficiency of this knowledgeable user's knowledge of the dangerous propensities of polyurethane. So now let's talk about the wet-dry vac, the shop vac. It had a very clear, a very accurate, and a very sufficiently severe warning. You cannot use this on any combustible or flammable product. And it went further. This warning was right on the vacuum, so you don't have to have the manual when you're using it because it's right there and he admitted that he saw it. But it also says right on the vacuum, read the manual. And when you read the manual, the manual is even clearer. Don't use on or near any combustible dusts. And that's what the district court focused on with respect to the adequacy of this very clear warning. So the only question... It's usually a question for a jury, right, the adequacy of a warning? It can be unless the record is so clear that the adequacy is clear, is concise, it expresses the severity of the warning and there's no dispute. This warning doesn't refer to uncured polyurethane sanding residue. It can't. And let me explain why. This is a general tool. It's a wet-dry vac. It is used in countless applications. It cannot list every flammable and combustible substance that a potential user might misuse it with. If that was the case, this warning would be 1,000 pages long. The court can take judicial notice, go onto the OSHA website, you will see thousands of combustible dusts that are used in various industries, plastics, pharmaceuticals, agriculture. The list goes on and on. And what the district court did was it focused on the case law here, Judge Chin, your case, the Kant case, which says that if it's clear and it's concise and it's accurate and it conveys the severity, that's sufficient. If you have to add all of these examples, you're going to dilute the warning and it's going to be a problem. And that's what happened here. There is no dispute that this professional who does this work with this particular combustible product knew exactly the dangerous propensities of it. He followed that practice, according to him, by making sure that he immediately disposed this combustible substance in a water-filled container. He didn't do it on this day. Why? That's his choice. Why didn't he? You're talking about a filter. Filter. He made reference. I was just looking at the deposition, his deposition. He was talking about a filter that somehow was part of one of either the, and I couldn't figure out whether it was from the sanding machine or the filter from the vac. I don't know. What he argued and what they argued was, and their expert report says, is that, okay, you have a wet-drive act that has this general broad warning, but you also sell sanding machines to floor-finishing professionals that has a specific warning because they have receptacles with their floor-finishing products that has a specific example of polyurethane sanding residue. That may be the case when you're selling a specific product for this particular industry. In any event, he knew about that warning. With respect to this general product, we have a broad warning that says, don't use it against, with any flammable substance, any combustible substance. The shop vac has a broader range of use. Absolutely. That's the whole point. But let's get back to the key issue because I don't think there's any real legitimate challenge to the district court's finding that the particular warnings on the shop vac were adequate. But even if there was, even if they could legitimately argue that there was some dispute over that, which I don't think they have, we have the most knowledgeable user here. This knowledgeable user goes to proximate cause. Absolutely. I mean, generally in New York, proximate cause is an issue of fact, but there are instances where proximate cause can be decided as a matter of law, and knowledgeable user happens to be one of those instances. And here, we have so many admissions. A knowledgeable user doesn't go to the adequacy of the warnings. And that's why I say, if the court had any question with respect to how the district court addressed the adequacy of the warning, then we move to the second analysis, which is the proximate cause, the knowledgeable user. So that's why I just shifted there. And I would say that, one, there's no real legitimate dispute over the adequacy of this warning. But even if the court found that, this is the most knowledgeable user, both in terms of his knowledge of the warnings on the MNWAC. The most knowledgeable user? What's that? The most knowledgeable? Well, I would say the most knowledgeable user with respect to this floor-finishing polyurethane product based upon his own testimony, his knowledge of the MNWAC's warnings, his knowledge about what he was MNWAC's 10 times over the course of 10 years. I mean, once a year, would you forget what you did a year earlier? No, because he was trained and he specifically repeated that in his deposition about the dangers of polyurethane sanding residue. You've got to put it in water. You can have horrific injuries if you don't. That's the essence of the knowledgeable user defense. And there's no dispute that he knew all of that. All right. Thank you. We'll hear the rebuttal. Even if he wasn't the most knowledgeable user, would you not agree that he was a knowledgeable user? Not regarding this specific risk, because if he had known what person with any sort of common sense, and a jury could decide that and should decide that, would vacuum up something he knew was going to hurt him. All the time. And absolutely a jury should decide whether this is that kind of person. Was it uncured? Yes. And liquid form of polyurethane? Yeah, definitely. Do not turn this vacuum on then. Why would he pick up something if it was smoking? You mean the vacuum itself? Yeah. Because he was going to pick it up and bring it to the sink and pour water in it. But he didn't know when he did that. One of my questions, why would you pick it up if it's smoking? It's a different question. Yeah, I mean, it doesn't, I don't know that that's. He knew not to smoke while he was doing it. Correct. And he knew when he was. Did he also know not to run any electrical implements that might, where the electrical motor might spark? He said that in his deposition. Absolutely. When you apply the Minwax, when you apply the polyurethane, that's a different story. This is 18 hours later when it's supposed to be dry, because you can't sand it. He had an appreciation of that, the dust itself. Actually, there's. The fact that the presence of the polyurethane was flammable. Right, polyurethane, out of the can, when you apply it, you shut off everything. The boiler, you don't. And they're done that. Okay, and you've probably picked up the dust after you've sanded. I'm telling you what I did. What is the tribal issue here? The tribal issue is, is this such a common use or a foreseeable misuse that there should be a specific warning? Because the defense. Assume the answer, it is a common use. Is there a tribal issue as to the adequacy of the warning? Absolutely. It should say, you don't, because this is a common use, it's a foreseeable misuse. People are going to. It should say uncured polyurethane dust. It should say polyurethane dust, period, never mind uncured. Because on the Minwax can, it says after 18 hours, it's dry, you can sand it. So he didn't know at the time that it was uncured. You would admit that there are a large number of things that shop vacs pick up that are potentially flammable, wouldn't you? Absolutely. Anything can be flammable, but because. 40 years, there's a whole host of things. I mean, the list would be so long. The list will cover all the whole, the device itself. It will be longer than gone with the wind. It will be sort of like those drug commercials that we all see. That you have to put every single thing, and that's by federal law. Because it's got thousands of items in it. This particular use is, we can demonstrate a trial. It's common. It's foreseeable. Everybody sands their wood floor and uses the shop vac. The connection between the use of the term flammability is not specific enough, notwithstanding knowledge about polyurethane. Is that it? Because the wet polyurethane, yes. It's different than the dry. Than the dry you've sanded. Right. And so, I have to say this. I would most respectfully request that this court reverse the district court's decision in granting summary judgment. Thank you. You wouldn't do that disrespectfully. Only respectfully. Thank you. It was a well-reserved decision.